**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**CAROL MADSEN,**

Plaintiff,

v.

**CAROLYN L. COLVIN,**
Commissioner of Social Security,

Defendant.

Case No. 3:13-CV-00819-CL

**FINDINGS AND RECOMMENDATION**

Merrill Schneider, Schneider Kerr & Gibney Law Offices, P.O. Box 14490, Portland, OR 97293. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; John C. Lamont, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**MARK D. CLARKE, Magistrate Judge.**

Plaintiff Carol Madsen ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is supported by substantial evidence, the decision should be **AFFIRMED**.

## BACKGROUND

Born in August, 1952, plaintiff was 52 years old on the amended alleged disability onset date of October 10, 2004. Tr. 20, 236. Plaintiff speaks English and has a high school education. Tr. 82. She has past relevant work experience as a business and database manager for the American Red Cross, and briefly worked as an assistant administrator, an office manager, and a database recorder. Tr. 82-84. Plaintiff filed applications for DIB and SSI on March 20, 2008, initially alleging disability as of April 30, 2002, due to fibromyalgia, back problems, asthma, hand problems, knee problems, diabetes, headaches, and high blood pressure. Tr. 324.

The Commissioner denied plaintiff's application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 162. After an administrative hearing held December 23, 2009, the ALJ issued a decision finding plaintiff not to be disabled on January 8, 2010. Tr. 40-76, 122-35. The Appeals Council granted plaintiff's subsequent request for review and remanded the case to the ALJ to further evaluate plaintiff's mental impairment, give further consideration to plaintiff's maximum RFC, and to obtain supplemental evidence from a VE. Tr. 141-44.

Plaintiff appeared before ALJ Steve Lynch for a second hearing on August 4, 2011. Tr. 77-99. At the hearing, plaintiff amended her alleged onset date to October 10, 2004. Tr. 20. On August 11, 2011, the ALJ issued a decision again finding plaintiff not disabled. Tr. 17-37. The Appeals Council denied plaintiff's subsequent request for review, making the ALJ's decision the final Agency decision. Tr. 1; 20 C.F.R. §§ 416.1481, 422.210 (2014). This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c);

416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**THE ALJ'S FINDINGS**

The ALJ performed the sequential analysis. At step one, he found that plaintiff had not engaged in substantial gainful activity between October 10, 2004 and June 30, 2007, her date last

insured. Tr. 22. At step two, the ALJ found plaintiff had the following severe impairments: fibromyalgia, carpal tunnel syndrome, asthma, depression, anxiety, and obesity. *Id.* At step three, the ALJ found that plaintiff's limitations did not meet or medically equal the criteria for any Listed impairment. Tr. 23.

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined that she could perform light unskilled and semi-skilled work with the following limitations: she could stand and walk four hours a day; she could not climb ladders, ropes or scaffolds; she could occasionally climb ramps and stairs; she could occasionally stoop, crouch, crawl, and kneel; she should avoid concentrated exposure to noxious fumes and odors; and she could only occasionally forcefully grip with her right hand. Tr. 24. At step four, the ALJ found that plaintiff could return to her past relevant work as an administrative clerk and general office clerk, and therefore concluded that plaintiff was not disabled. Tr. 28-29.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (1) improperly rejecting the opinion of treating physician Dr. Satterfield, (2) failing to find at step three that she met or equaled a Listed impairment due to fibromyalgia, (3) improperly rejecting her subjective symptom testimony, (4) failing to properly consider her knee impairment, and (5) failing to perform a function-by-function analysis of her limitations.

**Medical Opinion of Dr. Satterfield**

Plaintiff first argues that the ALJ improperly rejected the medical opinion of treating physician Deborah Satterfield, M.D. specifically her opinion as to her functional limitations resulting from fibromyalgia. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r,* 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's

opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1039.

Dr. Satterfield began treating plaintiff in 1995 as her primary care physician. Tr. 1757-58. On June 15, 2004, she performed a Fibromyalgia Syndrome Medical Assessment and found that plaintiff would miss more than four day a month due to her symptoms. Tr. 1366-70. She opined that plaintiff suffered from chronic pain, non-restorative sleep, breathlessness, morning stiffness, numbness and tingling/paresthesia, chronic fatigue, and depression. Tr. 1366. Dr. Satterfield also noted that plaintiff's pain and paresthesia was "severe." *Id.* She found multiple tender points present for fibromyalgia, after MRI and Mylegram testing. Tr. 1367. Dr. Satterfield opined that plaintiff was disabled by her physical and mental impairments, and thus

unable to work. *See* Tr. 762 (February, 2005 letter stating that plaintiff "suffers from almost every symptom of fibromyalgia" and is "totally and permanently disabled from fibromyalgia"), Tr. 1260 (May, 2006 note stating it is doubtful whether plaintiff is "ever going to be able to return to any kind of gainful employment").

In December, 2009, Dr. Satterfield completed an assessment form indicating her opinion as to plaintiff's specific physical limitations. Tr. 1352-56. She estimated both plaintiff's pain and her fatigue at 10 out of 10. Tr. 1354. Dr. Satterfield opined that plaintiff could stand and/or walk for one hour at a time, for a total of two hours in an eight-hour day. *Id.*, 1369. She also opined that plaintiff was limited to sitting for one hour at a time up to a total of three hours in an eight-hour day. Tr. 1354. Dr. Satterfield also assessed plaintiff's capacity to sit and stand at less than sedentary level. Tr. 1369.

Dr. Satterfield also assessed plaintiff's mental abilities and aptitude. Tr. 1371. In June, 2004, Dr. Satterfield wrote that plaintiff would be unable to meet competitive standards in her ability to understand, remember, and carry out very short and simple instructions. *Id.* She also opined that plaintiff would be unable to meet competitive standards in maintaining attention, ability to complete a normal workday and workweek, and ability to perform routine work at a consistent pace. *Id.* Dr. Satterfield opined that plaintiff had no useful ability to function in dealing with the stress of semiskilled and skilled work. Tr. 1371. In July, 2011, Dr. Satterfield advised plaintiff to stop working due to asthma. Tr. 1757.

Dr. Satterfield's opinion was contradicted by several other medical opinions of record, including those of Linda Jensen, M.D., Karen Bates-Smith, Ph.D., Bill Hennings, Ph.D., Sharon Eder, M.D., Richard Alley, M.D., and Paul Rethinger, Ph.D., all of whom opined that plaintiff was not completely disabled. *See* Tr. 1110, 1277-78, 1725-56. The ALJ was thus required to

provide specific, legitimate reasons for rejecting Dr. Satterfield's opinion. *Lester*, 81 F.3d at 830. The ALJ provided at least two such reasons. Tr. 27.

First, the ALJ stated that Dr. Satterfield's specific functional limitations were not consistent with the medical evidence. Tr. 27. Inconsistency with the medical record is a specific, legitimate reason for rejecting a physician's opinion. *Tommasetti*, 533 F.3d at 1040. For example, Dr. Satterfield opined that plaintiff is unable to handle, finger, or feel with either of her hands. *See* Tr. 1247. Medical evidence from Thomas McWeeney, M.D., and Michael Sluss, M.D., however, indicate that in 2006 plaintiff had normal strength in her hands after her bilateral carpal tunnel surgery, and that diagnostic testing was within normal limits. Tr. 938-39, 947, 949. A neurological assessment in 2006 revealed "grossly normal ... sensation, strength, [and] cranial nerves." Tr. 1260. David Huberty, M.D., examined plaintiff in 2008 and also found good grip strength and a normal electromyography study, despite reduced sensation in plaintiff's ring finger. Tr. 1078-79. While the medical evidence on the issue plaintiff's functional ability is debatable, the ALJ's interpretation of the evidence was rational. *See Sample*, 694 F.2d at 642. The ALJ therefore provided a specific, legitimate reason to reject Dr. Satterfield's opinion as to plaintiff's functional limitations. *Tommasetti*, 533 F.3d at 1040.

Second, the ALJ rejected portions of Dr. Satterfield's opinion that plaintiff was totally and permanently disabled by her fibromyalgia. Tr. 27, 762. The Regulations state that an opinion stating a claimant is "disabled" or "unable to work" is not a medical opinion because such opinions are reserved for the Commissioner. 20 C.F.R. § 404.1527(d); *see also McLeod v. Astrue,* 640 F.3d 881, 885 (9th Cir. 2010) (noting that the ultimate question of disability is reserved to the Commissioner and requires application of vocational expertise that physicians do not possess). Dr. Satterfield's notes contain numerous statements as to plaintiff's disability

status, and the ALJ was entitled to assign less weight to those opinions, properly reserving the ultimate disability determination. *McLeod,* F.3d at 885. The ALJ thus provided two specific, legitimate reasons for rejecting Dr. Satterfield's contradicted opinion in light of the entire record and in accordance with SSR 96-5p. While plaintiff alleges further error in the ALJ's reasoning, any such error is harmless because the ALJ provided legally sufficient reasons for rejecting Dr. Satterfield's opinion. *Carmickle*, 533 F.3d at 1162 (ALJ's reference to invalid reason for discounting evidence was harmless error given that ultimate determination was supported by valid reasons). The ALJ's evaluation of the medical evidence should be affirmed.

**Step Three**

Plaintiff next argues that the ALJ erred because he failed to find that she met or equaled a listed impairment at step three due to her fibromyalgia. Pl.'s R. Brief, 2-3. She contends that Dr. Satterfield's assessment provides a basis for finding that plaintiff met the criteria for Listing 14.09D. *Id.*; Tr. 1479. Because the ALJ properly rejected Dr. Satterfield's opinion, however, he was not required to consider that evidence in making his step three determination. Therefore, the ALJ did not err by failing to find that plaintiff's fibromyalgia symptoms met or equaled Listing 14.09D. The ALJ's step three findings should be affirmed.

**Credibility**

Plaintiff also contends that the ALJ failed to provide specific, clear, and convincing reasons for rejecting her testimony about the nature and extent of her impairments. *See* Pl.'s Br. 7. In particular, plaintiff disputes the argument that her daily activities are inconsistent with her hearing testimony. *Id.* at 14.

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929.

First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. *Smolen*, 80 F.3d at 1282. If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). If the record contains affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons for an adverse credibility finding. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti*, 533 F.3d at 1039. Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan*, 169 F.3d at 599.

In her application to the Agency, plaintiff stated that she has difficulty in every aspect of functioning, including hearing, seeing, talking, understanding, and social interaction. Tr. 339. She stated that her hands are mostly useless, and that she is forgetful and has difficulty concentrating. Tr. 324, 337. She reported that her attention span lasts only ten minutes, and that

she can walk only one block, stand only thirty minutes, and sit for only fifteen minutes. Tr. 87, 339. Plaintiff testified to the ALJ that she spends most of the day in a recliner. Tr. 25. She stated that she was completely disabled due to a range of conditions including fibromyalgia, asthma, and knee problems. Tr. 324.

The ALJ considered these allegations of severe symptoms and limitations in light of the entire record and concluded that plaintiff was not credible. Tr. 25-27. First, the ALJ found that plaintiff's testimony was contradicted by her daily living activities. *Id.* Conflict with a claimant's daily living activities is a clear and convincing reason for rejecting a claimant's credibility. *Tommasetti*, 533 F.3d at 1039. The ALJ pointed out that, after the alleged onset date, plaintiff traveled to Hawaii twice, frequently went camping, and regularly cared for her 2-year-old granddaughter. Tr. 1013, 1125, 1232, 1294, 1630. Activities such as these, which require at least a moderate degree of mental and physical aptitude, suggest that plaintiff was not as impaired as alleged in her statements to the Agency. It was therefore reasonable for the ALJ to conclude that plaintiff's activities were inconsistent with the level of symptoms alleged. The ALJ thus provided one clear and convincing reason to reject plaintiff's subjective symptom testimony. *Tommasetti*, 533 F.3d at 1039.

Plaintiff disputes the ALJ's interpretation of the evidence, arguing that the record "supports a finding that over the period of consideration, plaintiff tried to engage in activities she was used to performing, only to find that she could not perform them any longer or endure them without steroid injections in excess of her doctor's recommendation." Pl.'s R. Brief, 7. She points out that plaintiff requested a Vicodin prescription for one trip to Hawaii, was discontinued from physical therapy because exercises were "too hard," and experienced both good and bad days with fibromyalgia symptoms. Tr. 27, 1279, 1477; SSR 12-2 (stating that, for a person with

fibromyalgia, the ALJ must consider the longitudinal record whenever possible because fibromyalgia symptoms can wax and wane so that a person may have "bad days and good days"). To the extent that plaintiff offers an alternative interpretation of the evidence, however, it is insignificant because the Commissioner's interpretation is a rational reading of the record. *Sample*, 694 F.2d at 642. Moreover, unlike a trip to Hawaii, frequent camping trips and regular care for a 2-year old suggests a consistent level of physical and mental functioning that belies plaintiff's testimony, even taking into account the fact that fibromyalgia sufferers experience both "bad days and good days." SSR 12-2. Plaintiff's daily activities thus provided a clear and convincing reason to reject her subjective symptom testimony. *Tommasetti*, 533 F.3d at 1039.

Second, the ALJ noted that plaintiff's testimony was contradicted by the medical evidence. Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. *Carmickle*, 533 F.3d at 1161. For example, the ALJ pointed out that while plaintiff stated her hands were essentially useless, evaluation of her carpal tunnel syndrome during the relevant period reflected that plaintiff had good strength, a strong grip, and a normal neurological examination. Tr. 967-968. Nerve conduction testing completed in August, 2006, yielded normal results. Tr. 1078. A January, 2008, examination also showed intact strength, no weakness, no malalignment, a full range of motion, and intact reflexes. Tr. 1078-79. Plaintiff also exhibited good grip strength during the 2008 evaluation. *Id.* On this record, the ALJ reasonably concluded that plaintiff's testimony regarding the severity of her limitations was not credible because it conflicted with objective medical evidence in the record. *Carmickle*, 533 F.3d at 1161.

Third, the ALJ found that plaintiff's statements to treatment providers that her pain was well-managed by medication, that she was very active, and that she frequently went camping,

contradicted her claim that she was impaired in every area of physical functioning. Tr. 25-27. The ALJ is entitled to use ordinary techniques of credibility evaluation. *Tommasetti*, 533 F.3d at 1039. Here, the record contains plaintiff's inconsistent statements regarding her level of activity and pain. The ALJ properly used ordinary techniques of credibility evaluation to find that plaintiff had poor credibility. It was therefore reasonable for the ALJ to conclude that plaintiff was not entirely credible and assign little weight to her subjective symptom testimony. To the extent that plaintiff provides an alternative explanation of the record evidence, it is insignificant because the Commissioner's interpretation is rational. *Sample*, 694 F.2d at 642; *Burch*, 400 F.3d at 679. The ALJ's credibility finding should be affirmed.

**Knee Impairment**

Plaintiff next argues that the ALJ erred by failing to find her knee impairment to be "severe" at step two.[1] At step two, the ALJ determines whether the claimant's impairment is severe under the Commissioner's regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). When the Commissioner resolves step two in the claimant's favor, the claimant has the burden to show that any impairment omitted at step two results in greater limitations than the ALJ included in the RFC assessment. *Burch*, 400 F.3d at 682-83 (finding no error in the ALJ's omission of claimant's obesity at step two because the record did not indicate that claimant's obesity exacerbated her other impairments).

The ALJ considered plaintiff's knee impairment at step two and found that it was not severe. Tr. 23. He first considered a 2006 MRI of plaintiff's knee and found the results were not significant. Tr. 1001-06. The ALJ also noted evidence that plaintiff's knee pain was relieved by a steroid injection. *Id.* Despite discussion of arthroscopic surgery by Paul Reusch, M.D.,

[1] Plaintiff concedes in her Reply Brief that the alleged error was not substantive until the ALJ proceeded past step two.

plaintiff was not interested in pursuing surgery for her knee impairment. *Id.* Plaintiff's repeated requests for injections (*see* Tr. 1001) indicate that she was satisfied with the steroid treatment.

Despite finding her knee impairment to be not severe, the ALJ resolved step two in plaintiff's favor. Tr. 23. The ALJ then proceeded with the sequential analysis and found that plaintiff has the RFC to perform light work with limitations.

Plaintiff argues that, when combined with her obesity, her knee impairment interferes with her ability to exercise, perform physical therapy, and lose weight, and is thus a severe impairment affecting her overall residual functional capacity. Pl.'s Br. 6. She cites evidence from treating physician Dr. Satterfield, who opined that plaintiff's knee condition "affects her ability to stand and walk" and noted that plaintiff's knee condition limited her to standing and walk only three hours a day. Tr. 1758. In 2006, Dr. Ruesch also noted a small tear in the meniscus of plaintiff's left knee. Tr. 1704. Dr. Reusch gave plaintiff one steroid injection for pain, but noted that her symptoms worsened one month after the injection. Tr. 1705. As discussed above, Dr. Reusch recommended arthroscopic surgery. *Id.* In July, 2008, James Ballard, M.D., opined that plaintiff had "severe" degenerative arthritis in her knees. Tr. 1295. Plaintiff argues that this evidence contradicts the ALJ's reasoning in finding her knee impairment not severe. Pl.'s Br. 7.

Even assuming that the ALJ improperly evaluated plaintiff's knee impairments at step two, however, any such error was harmless because the ALJ incorporated all of plaintiff's credible knee-related functional limitations into the RFC. *Burch*, 400 F.3d at 682-83. Specifically, the ALJ limited plaintiff to light, unskilled work with several additional limitations. Tr. 24. These limitations included the instruction that plaintiff could not engage in standing or walking more than four hours per day due to her compromised ability to stand and walk. The

Court finds that the ALJ's RFC assessment, while debatable, was a reasonable interpretation of the credible evidence in the record.[2] *Burch*, 400 F.3d at 682-83. To the extent that plaintiff offers an alternative interpretation of the evidence, that interpretation is insignificant to the extent that the ALJ's interpretation of the record was rational. *Sample*, 694 F.2d at 642; *Burch*, 400 F.3d at 679 (variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record). Because plaintiff fails to show how her alleged knee impairment would result in greater limitations than found in the ALJ's RFC assessment, the court finds no reversible error in the ALJ's step two findings.[3] *See Burch*, 400 F.3d at 682-83. The ALJ's decision should be affirmed.

**Function-By-Function Analysis**

Plaintiff argues, finally, that the ALJ failed to perform a function-by-function analysis of her impairments. The Regulations require the ALJ to determine a claimant's physical abilities. 20 C.F.R. § 404.1514; SSR 96-8p, 1996 WL 374184, at *1. The Ninth Circuit has stated that the Regulations require "only that the ALJ discuss how the evidence supports the [RFC] and explain how the ALJ resolved material inconsistencies or ambiguities in the evidence;" the "ALJ is not required … to engage in a function-by-function analysis under SSR 96-8p." *Mason v. Comm'r*, 379 Fed. Appx. 638, 639 (9th Cir. 2010); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

Here, the ALJ found that plaintiff was capable of performing light work and could stand and walk for up to 4 hours in an 8-hour workday. Tr. 24. The RFC did not include Dr.

---

[2] As discussed above, the ALJ properly rejected plaintiff's credibility and portions of Dr. Satterfield's opinion.

[3] The Court also notes that plaintiff did not follow Dr. Reusch's recommendation for surgery.

Satterfield's limitation upon plaintiff's ability to sit, and plaintiff argues that the RFC thus did not include all of her functional limitations. The ALJ, however, is not required to incorporate into the RFC limitations that he properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (ALJ is not required to incorporate into the RFC limitations that were properly discounted). Because the ALJ's rejection of Dr. Satterfield's opinion and plaintiff's testimony was supported by legally sufficient reasons, he was not required to incorporate limitations supported by that evidence into the RFC. The Court therefore finds that the ALJ incorporated plaintiff's credible limitations into the RFC; for this reason and the reasons discussed above, the Commissioner's decision should be affirmed.

## RECOMMENDATION

The ALJ's conclusion that plaintiff is not disabled is supported by substantial evidence and should therefore be AFFIRMED.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. FED. R. CIV. P. 72, 6.

Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this 30 day of May, 2014.

MARK D. CLARKE

United States Magistrate Judge